# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**DEANNA J. SIMMONS**                                                               **PLAINTIFF**

**V.**                          **No. 4:22-CV-00095-LPR-ERE**

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security**                                     **DEFENDANT**

## RECOMMENDED DISPOSITION[1]

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file objections to this Recommendation. Objections should be specific and must include the factual or legal basis for the objection.

To be considered, objections must be received by the Clerk of the Court within fourteen days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt the Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.     BACKGROUND

Ms. Deanna Simmons filed an application for social security benefits due to cervicalgia, neck pain, shoulder pain, arm pain, cervical spinal stenosis, cervical disc degeneration, cervical radiculopathy, and anxiety. *Tr. 246.*

---

[1] Ms. Simmons' brief is replete with acronyms, some of which are never defined. In future briefings, Ms. Simmons' counsel should define an acronym, at least once, before using it.

1

Ms. Simmons' claim was denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") held a telephonic hearing on February 1, 2021, where Ms. Simmons appeared with her lawyer. The ALJ heard testimony from Ms. Simmons and a vocational expert ("VE"). *Tr. 34-59.* On April 13, 2021, the ALJ issued a decision finding that Ms. Simmons was not disabled. *Tr. 7-25.* The Appeals Council denied Ms. Simmons' request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-7.*

Ms. Simmons, who was thirty-five years old at the time of the hearing, has a college degree, and has past relevant work experience as bank teller, insurance clerk, and registrar's assistant. *Tr. 36, 43, 56.*

## II. THE ALJ's DECISION[2]

The ALJ found that Ms. Simmons had not engaged in substantial gainful activity since August 29, 2019, the alleged onset date. *Tr. 19.* The ALJ concluded that Ms. Simmons had the following severe impairments: disorder of the lumbar spine with disc bulge that abuts the nerve; a post-surgery disc bulge that abuts the nerve with cervical radiculopathy; and obesity. *Id.* However, the ALJ found that Ms.

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g); 20 C.F.R. §§ 416.920(a)-(g).

Simmons did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 14-15*.

According to the ALJ, Ms. Simmons had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) occasional bilateral overhead reaching; (2) occasional stooping, twisting, and crouching; (3) occasional bilateral pushing and pulling with the upper extremity; and (4) frequent left side handling and fingering. *Tr. 21*.

In response to hypothetical questions incorporating the above limitations, the VE testified that potential jobs were available in the national economy that Ms. Simmons could perform, including her previous job as an insurance clerk, as well as cutter and paster, document preparer, and nut sorter. *Tr. 56-57*. Accordingly, the ALJ determined that Ms. Simmons was not disabled.

## III. DISCUSSION

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

> B.  **Ms. Simmons' Arguments for Reversal**

Ms. Simmons contends that the Commissioner's decision is not supported by substantial evidence. She argues that the ALJ erred by: (1) failing to develop the record fully and fairly; (2) finding that her mental impairments were non-severe; (3) failing to properly assess her credibility; and (4) using an RFC that exceeds her abilities. *Doc. 9 at 1-2.* After careful review of the record and the parties' briefs, the Court recommends affirming the Commissioner's decision as set out below.

> 1.  **Developing the Record**

Ms. Simmons argues that the ALJ failed to develop the record. She contends "the ALJ's PRT[3] was defective in that it focused on one single year-old function report . . . to the exclusion of all testimony and MER, and despite evidence and testimony of recent mental health treatment and ongoing psychotropics." *Doc. 9 at*

---

[3]Psychiatric Review Technique assessment.

*13*. Notably, the medical records Ms. Simmons relies on were supplied to the Commissioner after the ALJ issued her opinion. During the February 1, 2021 hearing, the ALJ held the record open for thirty days so that Ms. Simmons could submit additional medical records related to her mental health. *Tr. 38*. The records, dated from January to June 2021, were submitted in June 2021 – 144 days later. The ALJ issued the opinion on April 16, 2021, so, of course, these records were not considered. *Tr. 28*. Ms. Simmons provides no law requiring an ALJ to keep the record open indefinitely. The evidence considered by the ALJ showed minimal mental health treatment and limitations. *Tr. 19*-20. For example, Ms. Simmons' anxiety was only moderate and was effectively treated with medication. *Tr. 81*. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

"While an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped, the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (internal citations and quotations omitted). Ms. Simmons "has the burden to offer the evidence necessary to make a valid decision about her claim." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). She "bears a heavy burden in showing the record has been inadequately developed. She must show both

a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). "[A]n ALJ does have a duty to develop the record, [but] this duty is not never-ending . . . ." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

The Appeals Council also fulfilled its duty after it received the late, supplemental medical records related to Ms. Simmons' alleged mental impairments. The Council noted: "You submitted records from Counseling Associates dated January 28, 2021 to March 23, 2021. We find this evidence does not show a reasonable probability that it would change the outcome of the decision." *Tr. 2*. Nothing more was required. Additionally, the Council's finding is consistent with the medical records as a whole. Although Ms. Simmons started seeing a therapist, she failed to establish that she suffers from a severe mental impairment.

In sum, there was no need to further develop the record because substantial evidence supported the ALJ's finding regarding Ms. Simmons' mental impairments.

### 2. Step Two

Ms. Simmons also challenges the ALJ's Step Two findings. She "reiterates, and adopts by reference, much of her argument contained in the preceding section, particularly as to the severity determination regarding [Ms. Simmons'] two medically determinable mental impairments." *Doc. 9 at 11*.

The ALJ noted that Ms. Simmons had only mild limitations in the areas of understanding, remembering, or applying information. *Tr. 20*. The ALJ recognized that Ms. Simmons had a four-year college degree and handled her own finances. *Id*. She observed that Ms. Simmons had only mild limitations in interacting with others because she was "social, spent time with family, went to church on a regular basis and sang at church on Sundays." *Id*.

Ms. Simmons points out that she visits only one friend. *Doc. 9 at 9*. This argument is unconvincing. Furthermore, it is quite likely that more than one other person attends Ms. Simmons' church. After finding only mild limitation in concentrating, persisting, maintaining pace, and adapting or managing oneself, the ALJ recited Ms. Simmons' activities of daily living. *Tr. 20*. Finally, the ALJ noted minimal treatment for mental health and the impairments were controlled with medication.

Finally, the additional (tardy) counseling records from January 20, 2021 indicated "depression reported within the last 30 days." *Tr. 74*. A behavioral assessment performed in July 2020 revealed no previous inpatient or outpatient treatment for mental health. *Tr. 637*. One of the performed tests found only mild depression, while a second test was in the "normal range" for both depression and anxiety. *Tr. 638*. The additional records do not rebut these findings. On January 28, 2021, a counselor found that Ms. Simmons' mental health "treatment prognosis is

good if treatment recommendations are followed." *Tr. 80.* Additionally, Ms. Simmons has treatment only once or twice a month. *Tr. 62.*

The evidence of record supports the ALJ's findings.

### 3.     The Credibility Assessment

Ms. Simmons asserts that the ALJ did not comply with the *Polaski* factors when making a credibility assessment of the subjective complaints. She argues that "the ALJ instead focused on Plaintiff's medical records and discounted her subjective complaints because they were not supported by those records. The ALJ's actual *Polaski* paragraph is abbreviated and conclusionary. . . ." *Doc. 9 at 14*.

The Court normally should defer to an ALJ's credibility determination. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). An ALJ's brevity is not reversible error so long as the ALJ's reasoning allows for "appropriate judicial review." *Id*. When evaluating the credibility of a claimant's subjective complaints, an ALJ must consider the *Polaski* factors, which include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). Also relevant is the absence of objective medical evidence supporting the claimant's

subjective complaints, although the ALJ cannot discount a claimant's credibility based on this alone. *Id*. at 932.

Ms. Simmons argues that the ALJ relied solely on the objective medical evidence to discount her subjective complaints. *Doc. 9 at 14-15*. Actually, the ALJ noted that Ms. Simmons' described activities of daily living were "fairly limited." *Tr. 24*. He recognized that:

> the allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the opinions expressed by the claimant's treating surgeon and the assessments made her functional capacity evaluation.

*Tr. 24*. The ALJ considered that Ms. Simmons could prepare simple meals, go outside, go out alone, drive (although with difficulty turning her head), go shopping alone, go to church on a regular basis, and sing at church. *Tr. 20, 271*. Ms. Simmons' "regular physical activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015). See also, *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (holding that daily activities such as cooking, cleaning, visiting friends and relatives, and attending church was inconsistent with subjective complaints of disabling knee pain).

Based on the evidence as a whole, the ALJ's findings were supported by the record and there is no reason to depart from the deference normally given to the ALJ's credibility determination.

### 4. RFC

Ms. Simmons contends that "[t]here are a myriad of inconsistencies in the ALJ's analysis and [RFC] determination." *Doc. 9 at 16*. Specifically, she takes issue with the ALJ discounting a Functional Capacity Evaluation by Mr. Stuart Jones.

Ms. Simmons bears the burden of proving her RFC, which represents the most she can do despite the combined effects of his credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Id*. "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ's analysis of Mr. Jones' report is reasonable and supported by the record. On January 13, 2021, Mr. Jones found that Ms. Simmons could perform a reduced level of sedentary work. *Tr. 774*. Yet in a January 29, 2021 report – just over two weeks later – Mr. Jones found that Ms. Simmons was unable to perform sedentary work. *Tr. 824*. In fact, the January 29 report appears to contradict itself.

At one point it notes that Ms. Simmons can perform sedentary work but two pages later says she is unable to sit for six hours of an eight-hour workday. *Tr. 822, 824*. It was entirely appropriate for the ALJ to find Mr. Jones' January 29 report unpersuasive based on these inconsistencies and in light of the record as a whole. Finally, a court "will not reverse simply because some evidence may support the opposite conclusion." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Ultimately, the RFC finding reflected those limitations which the ALJ found to be credible, and it is supported by the medical evidence as a whole.

## IV. CONCLUSION

The ALJ applied proper legal standards in evaluating Ms. Simmons' claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated this 28th day of November, 2022.

_____
UNITED STATES MAGISTRATE JUDGE